Good morning. My name is Lisa Bazant. I am a CJA attorney here in Billings, Montana, and it has been my privilege to represent Isaac Kimber in this habeas case before this court. On May 24, 2004, an indictment was filed in the District of Montana charging Mr. Kimber and 12 other defendants with a 26-count indictment, that last count being a Pinkerton theory. So 2 through 25 were substantive counts. Count 1 was a conspiracy count. Mr. Kimber was arrested in June 2004. He has been incarcerated ever since. A superseding indictment was entered in August 2004. And in February 2005, he changed his plea to two of those counts. Count 1 being the conspiracy to possess and distribute methamphetamine. And count 23 being possession of firearms in furtherance of a drug trafficking crime. That possession of firearms was alleged to have been committed on December 9, 2003. The issue that we're here to discuss today is his actual innocence as to that count, count 23, for which he pled guilty to. Doesn't he have to show actual innocence as to the entire charged misconduct in the indictment? Well, that is true, Your Honor. Under Bosley? Under Bosley, the government is entitled to show that he could be convicted of any of the counts for which he was named in the indictment, including counts that were dismissed pursuant to the plea agreement. And Mr. Kimber was named in count 1, 20, 21, 22, and 23. But by the Pinkerton theory, he's named in all of them. So yes, we would have to have evidence on all of them. And that's the point of this. There has never been any evidence. Mr. Kimber pled guilty without ever going to trial, without ever having a hearing. And what is important here is that he didn't realize that the count for which he pled guilty to, count 23, he is actually innocent of. But don't you have to get the plea removed before you can get through? I mean, what do you want? What's your ultimate aim here? He's pled guilty to a crime you say he didn't commit. Yes, Your Honor. He did plead guilty. What am I shooting for here today? I'm not swinging for the fence, Your Honor. I'm shooting for his day in court. That's what I'm asking this court to do, is to send this case back to the district court to have a hearing to determine whether or not he is actually innocent. But he admitted under oath that he possessed certain identified firearms and that it was in connection with a methamphetamine conspiracy. What do we do with that? Well, the conspiracy was over. The conspiracy had ended in October 6th of 2003 when his supplier, Mr. Santiago, was arrested. But he didn't know that. Is there anything in the plea colloquy that cabins it to those dates? No, there isn't. There is nothing. So he, under oath, as part of his plea agreement, responding to questions from the district court, said, yes, I possess these three firearms, and it was in connection with a methamphetamine conspiracy. And then the government said what they could prove, and he admitted that they could prove that. What do we do with that? Well, indeed he did. But everyone in that courtroom was operating under the misconception that this conspiracy was ongoing. The court operated under that, the prosecutor operated under that, and his attorney was operating under that. But there was no evidence after October 6th, 2003, that this conspiracy was in fact ongoing, when in December 9th, two months later, he possessed these firearms. What proof is there in the plea colloquy of that assumption? That the entire court was under the misconception? It's all over the plea colloquy. It's in the judge's orders, demanding the government to expand the record. It has been admitted in the pleadings and in the court's order. Nobody understood that the conspiracy had ended on October 6th. And indeed, this court accepted that determination that the judge finally made over a year later in its ruling in regards to another conspirator, Mr. Garcia. This court acknowledged that the conspiracy was over on October 6th, 2003. The guns that were found in Mr. Kimber's possession on December 9th, 2003, were not connected to this conspiracy. Well, so I understand what the district court did when you brought the motion, is that the district court said that's true. The conspiracy was over, but there was sufficient evidence to sustain the conviction of using a firearms connection with a drug offense because of what we found in the car. How do you respond to that? Well, first of all, the drug offense would be 4.2 grams of methamphetamine that was found on his person. Right. 4.2 grams, just a little over an eight ball. Personal use. Especially given the fact that Mr. Kimber was a heavy user. But the district court found that it wasn't just consistent with personal use. Not just because of the amount of the drug, but because of the other paraphernalia found in the car, right? What's wrong with that? Well, there's a couple things wrong with that. First of all, we are missing a huge fact that Mr. Kimber had previously pled guilty to these same 4.2 grams in state district court, in front of then state district court Judge Waters. Why is that important? Well, I think it's very important because now we've got two judicial facts. We've got two facts. Those state charges were dismissed, first of all, correct? They were dismissed for the benefit of the folks watching. Quite a while after the fact. After he had already been sentenced to 15 years, they were dismissed. But he had previously pled guilty to 4.2 grams, the same ones that are forming the basis of this case here today in state district court. So is your point to, maybe because I interrupted you, I just want to make sure that I'm following your point. Is it that in the state court he pled to simple possession and not trafficking? Yes, he did. All right, so what's wrong with the theory that the district court relied upon that the other evidence in the car, the drug paraphernalia, supported an inference of trafficking? Well, I think there's a lot of problems when we don't actually have a hearing. And the evidence that the government presented was four sheets of paper. Three pieces of the initial reports from the police officer and an inventory sheet. Police reports are not evidence. They can't be cross-examined. They are not an exception to hearsay. They have no guarantee of trustworthiness. I can't cross-examine a police report. I can't point out inconsistencies. I can't show how the police reports are spun to lead to criminal charges. I can't do that. One thing I didn't get is I didn't get proof of fingerprints. I don't have a watchguard video. I don't have the application for the search warrant, a sworn application that was made before Judge Ball. I don't have any of that. I don't have the police officers on the stand to question them. I don't get to talk about how this car belonged to Angela Hood instead of Mr. Kimber. I don't get to talk about Michael Stuecker, the other individual that's in the car. I don't get to talk about the other evidence that's in the car that could show ownership of these items. And this is important stuff. I should be able to. The difficulty, though, again, gets back to the guilty plea. How do you get around that, this guilty plea? Well, I think the way we get around this is by looking at exactly who this individual is. Right. I mean, at some point you have to be able to essentially claim that the guilty plea was involuntary. True? True.  A guilty plea is only as good as it's intelligent and voluntary. And here we had a 21-year-old young black man, ninth grade education, unstable family, very naive when it came to the criminal justice system. His PSI reflects that his only criminal history point is one point when he was 15, during a truancy pat-down that he had marijuana seeds. That's it. That's what we've got. And we are expecting him to rely on the knowledge and the information and the intelligence of his criminal defense attorney. And we're relying upon the truthful and ethical obligations of the prosecutor to give all the information to show that he is going to be found guilty. And we're expecting the courts to uphold justice. Your Honor, do you want to reserve? I have 46 seconds. Yes, Your Honor, I would like to reserve the remaining time. Thank you. Good morning. Laurie Sook for the United States. We have to bring this argument back to who has the burden. And the burden here is on Mr. Kimber because he has filed an untimely petition. As you wrote, Justice Thomas, in Lee v. Lampert, the standard is high. The Schlupp gateway requires that Mr. Kimber show his factual innocence to you by proving that it's more likely than not that no reasonable juror would have convicted him. And Schlupp further elaborates that by saying that means that every juror would have voted to acquit. And then Judge Kaczynski, in his concurring opinion, gave us the reason why, because that Schlupp gateway would become a welcome mat if we do not hold defendants to their burden of factual innocence. So let's get back to the crime that he pled guilty to, which is possession of firearms in furtherance of a drug trafficking offense. There absolutely was a misconception of everybody standing in the courtroom that day at the change of plea that the conspiracy was ongoing. But that's not even the drug trafficking offense that was referenced in the gun count. The drug trafficking offense that was referenced in the gun count was a possession with intent to distribute 4.2 grams of methamphetamine. And that was the question posed to Mr. Kimber by Judge Siebel. Did you possess with intent to distribute 4.2 grams of methamphetamine? Answer, yes. Did you have these guns in furtherance of that drug trafficking offense? Yes. That's his change of plea testimony. And Muth tells us that that has a strong presumption of accuracy. The troubling fact about this case is that the sentencing was so confused. Judge Siebel said in his order later, everybody was operating under a misconception about the conspiracy. The charge was not related to the counts were misdescribed. Yes. And he's pled guilty to a crime that really didn't fit count 20. And everybody said, well, no, we really meant 22, as I recall. There certainly were errors. But 23 doesn't refer to 22. Count 23, possession of a firearm in furtherance of a drug trafficking crime, refers to, I think your theory is that there was a typo. But it does refer to the wrong count, right? It does refer to the wrong count. There were certainly errors in this proceeding. But those errors don't result or lead to or give you what you need to believe that Mr. Kimber is factually innocent. What should we do with those errors if we are concerned that there was confusion at the time of the sentencing? At this stage of the proceeding, those errors, however unfortunate, are not relevant to your inquiry. Because what we want to do at this stage of a habeas proceeding is ensure that somebody is not serving a sentence. Somebody is not convicted of a crime they did not commit. And so your concern has to be whether Mr. Kimber is factually innocent. And there are errors that certainly a court can look at, at different stages of a proceeding. But we're not there here. Here, we have a burden that Mr. Kimber cannot meet. That he's actually innocent of all of the charges. That's your theory, that he has not met his burden of proof of showing that he's actually innocent of all the charges. He has not, Your Honor. And for the reasons that the district court pointed out, pieces of evidence, the whole is greater than the sum of the parts. So you can certainly say that 4.2 grams of methamphetamine isn't much. But then again, you can also consider the statements that Mr. Kimber made during the probation officer's interview of him for the pre-sentence investigation report where he admitted that this is absolutely a salable amount for him. Then you can consider that he had babies. He had a scale. He had guns. All of these units add up to drug trafficking offense. And besides the fact, the meth that was on his person, well, 451 in cash was also on his person, which the state courts described as a large amount of cash. And it is here in Montana. I think you'd have to concede that if he had been sentenced after all the other defendants' cases had been resolved, it would have been unlikely that he would have pled to this count. Because everybody was under the assumption that this was an overarching conspiracy and the guns were used in connection with the conspiracy when, in fact, the conspiracy had ended at the time. I can't agree with you because he was facing another gun count that was clearly, count 21, clearly within the conspiracy. And so it was a benefit to him for a gun count to be removed. And that gun count he has to be innocent of as well. So even though there were issues with respect to this conspiracy that occurred after the fact, quite frankly, as Judge Siebel pointed out in his order at ER 200, Mr. Kimber caught Santiago disease. He was expected to testify and the evidence was expected by all to prove that this conspiracy expanded all the way through December 9, 2003. It didn't happen. But you have to look at what Mr. Kimber gained from this plea, even if there are errors with respect to it. And he gained a lot. And he has to be, as Judge Hawkins pointed out, innocent of every one of these offenses in order to overcome his burden today. Let's just, for argument's sake, say that you decide. So we're going to give it to him. Okay? We're going to say he's factually innocent. We're going to say he's made his burden. And we're going to send it back to the district court for ineffective assistance of counsel. That has to be determined now. So what does Mr. Kimber gain if he wins that? He gains an indictment with a lot more counts that he faces because the remedy, as you have found just most recently, January 13th in the Dive case, is to put the parties back where they were at the time of the ineffective assistance of counsel. Meaning that the plea agreement goes away and then you decide to proceed to trial or not. Absolutely. So Mr. Kimber, with all due respect, better be careful of what he asks this court. But the reason why that is the dire consequences of all of this is because at this stage of the proceeding, we are only concerned about people who are actually factually innocent. And if Mr. Kimber was, then his conviction would be reversed and he would gain five years. Would your position be the same if his habeas motion-slash-petition were timely? It would be a different standard, Judge Hawkins, but it would be the same because we believe the ineffective assistance of counsel claim would then be considered. But as you know, even if you could find deficient performance on the first prong under Strickland, you have to find prejudice under the second prong. And we believe we could overcome that, that he was not prejudiced because of what he faced. Another gun count, additional charges. I mean, that's why the burden is what it is today at this stage of the proceeding. He gains if he's factually innocent. He gains nothing if he's not. Any further questions? Thank you for your argument. Thank you. We'll hear rebuttal. Thank you. I have a very limited amount of time, so there's just a couple things I want to point out. First of all, the government's argument, be careful what you wish for, you might just get it. Well, that's Mr. Kimber's decision. He's the one who was sentenced to 15 years. He's the one who has been incarcerated all this time. He is the one who brought this petition, and if he wants to face those charges, then that's his decision. It shouldn't be the government saying, maybe that's not what you want. But more importantly, the idea that there are other gun counts that are clearly within the conspiracy, we have no facts to support that. There has never been a hearing in this case. There has never been any evidence. And that in itself, with all of the problems that have been associated with this case, should be enough for this court to have doubt as to the reliability of this. And one final thing that I need to bring up is, where were the guns found? Mr. Forsythe, in his motion to suppress, alleged that those guns were found in a locked trunk. Now, that's nowhere in the police reports that the government gave us. But that's up there. And what was the government's response to that motion to dismiss? One sentence. The United States requests a hearing to determine the facts. Well, ladies and gentlemen, this is what I'm requesting to do. I just want a hearing so I can ask the hard questions and I can determine the facts. Thank you, counsel. The case, as heard, will be submitted for a decision. Thank you both for your arguments.
judges: Thomas, Hawkins, Christen